041232/19344/MHW/JFM/DBS

# IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY TRIPP, | |
| Plaintiff, | |
| | Case Number  15-cv-1728 |
| v. | Judge Jorge L. Alonso |
| SUPT. ENGELSON et al, | |
| Defendants. | |

### DEFENDANTS', WEXFORD HEALTH SOURCES, INC. AND MARY DIANE SCHWARZ, P.A.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, WEXFORD HEALTH SOURCES, INC. and MARY DIANE SCHWARZ, P.A., by and through their attorneys, Matthew H. Weller and James F. Maruna, of CASSIDAY SCHADE LLP, and for their Memorandum of Law in Support of Their Fed. R. Civ. P. 56 Motion for Summary Judgment, state as follows:

### INTRODUCTION

Plaintiff, ANTHONY TRIPP, a former inmate at Stateville Northern Reception and Classification Center ("Stateville NRC"), filed a complaint against Illinois Department of Corrections ("IDOC") prison officials, one of his medical providers, MARY DIANE SCHARZ, P.A., and P.A. Schwarz's employer, WEXFORD HEALTH SOURCES, INC., claiming civil rights violations related to, *inter alia*, a failure by P.A. Schwarz to give him medications during a new inmate medical intake screening allegedly performed by P.A. Schwarz on October 31, 2014, when the Plaintiff transferred from Cook County Jail to Stateville NRC. *See* Defendants Statement of Undisputed Facts ("SOF"), ¶¶ 3-4.

Initially, the Plaintiff sues P.A. Schwarz for failing to give him medication during this examination, but the objective medical evidence establishes that P.A. Schwarz never actually saw or treated the Plaintiff. P.A. Schwarz reviewed the medical records, and testified that she never saw or examined the Plaintiff. (SOF at ¶ 48). Rather, the Plaintiff was seen by Nurse Lisa Dart, P.A. Claude Owikoti (the prison's other physician's assistant), and mental health professionals. (SOF at ¶ 53, 57-58, 60).

As to Wexford, the Plaintiff sues Wexford only an in impermissible *respondeat superior* liability theory based on the alleged failures of its employee, P.A. Schwarz. (SOF at ¶ 4).

Construing all uncontroverted facts in the light most favorable to the Plaintiff, his claim for deliberate indifference fails as a matter of law. Accordingly, this Honorable Court should enter an Order granting summary judgment in favor of P.A. Schwarz and Wexford and against the Plaintiff.

## II.  MATERIAL FACTS

The Defendants incorporate their Statement of Undisputed Facts Pursuant to Local Rule 56.1 and accompanying exhibits, filed concurrently with this Motion for Summary Judgment and supporting Memorandum of Law.

## III.  ARGUMENT

### A.  Venue and Jurisdiction are Proper

The Defendants have consented to this Court's jurisdiction and venue by admission in his Answer to the Plaintiff's First Amended Complaint. (SOF at ¶ 3-4).

### B.  Summary Judgment is Proper in this Matter

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After a properly

supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  Though facts must be viewed in the light most favorable to the non-moving party at the summary judgment stage, this rule only applies if there is a "genuine" dispute as to those facts.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**C.     Plaintiff, Improperly, Holds P.A. Schwarz Liable for Medical Care in Which She Never Participated**

As a threshold matter, Plaintiff, improperly, seeks to hold P.A. Schwarz liable for medical care in which she never participated.  (SOF at ¶ 48).  Liability under 42 U.S.C § 1983 requires direct and personal involvement in the situation that causes injury to an inmate.  *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).  In order to hold someone liable under § 1983, that person has to have personally participated in the alleged constitutional deprivation - which, in this case, is medical care.  *See Munson v. Gaetz*, 673 F.3d 630, 637 (7th Cir. 2012) (noting that individual liability under § 1983 requires personal involvement in the alleged constitutional deprivations); *see also Gevas v. Wexford Health Sources, Inc.*, No. 2012-C-1297, 2016 US. Dist. LEXIS 40849, * 9, 2016 WL 1213667 (N.D. Ill. Mar. 29, 2016) (dismissing a Wexford medical provider when "[Plaintiff] has presented no evidence that [Wexford medical provider] was responsible [for treatment decisions complained of by the inmate]).[1]

Here, the Plaintiff claimed that he treated with P.A. Schwarz only one time, October 31, 2014.  *See* SOF at ¶ 45 ("October 31, 2014 was the very first and only time I seen Diane").  When a Wexford medical practitioner, such as P.A. Schwarz, performs a medical examination of an inmate

---

[1] While not expressly pled, for completeness of the argument, the Defendants will briefly mention that Plaintiff cannot claim vicarious liability against P.A. Schwarz for Nurse Lisa Dart's treatment decisions on October 31, 2014. Vicarious liability is not available in a Section 1983 claim. *Iskander v. Forest Park*, 690 F.2d 126, 127 (7th Cir, 1982); *see also Hahn v. Walsh*, 762 F.3d 617, 640 (7th Cir. 2014) ("*Iskander* is compatible with the holding of every circuit to have addressed the issue")

at Stateville NRC, he or she generates a medical progress note of his or her interaction with that inmate. (SOF at ¶ 15). The progress note is maintained in the inmate's IDOC medical file. (SOF at ¶ 15). Specifically, as to P.A. Schwarz, she testified that she always makes a medical progress note. (SOF at ¶ 16). She does this so that if she sees the patient again, she can refer back to her prior notes. (SOF at ¶ 16). In this case, P.A Schwarz reviewed the inmate's medical file, including specifically, October 31, 2014 - the only day that the Plaintiff testified he treated with P.A. Schwarz. (SOF at 45, 51). **P.A. Schwarz confirmed that she never authored a single medical note in the chart, so she never saw or treated the Plaintiff. (SOF at ¶ 51).**

Fact discovery has closed and the only evidence that the Plaintiff offers in support of his allegation that he treated with P.A. Schwarz is his own testimony which is directly contradicted by the testimony of P.A. Schwarz and the objective medical record that identifies the actual providers he treated with on October 31, 2014. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction").

**D.    Even if the Court Believes the Plaintiff That He Treated With P.A. Schwarz, In Spite of Objective Evidence to the Contrary, the Plaintiff Has Not Established the Elements of Deliberate Indifference Against P.A. Schwarz**

*1.    Plaintiff must establish all three elements of deliberate indifference to prevail*

In order to prevail on a claim under § 1983, the Plaintiff must show that P.A. Schwarz acted with deliberate indifference to his serious medical need or condition. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). The burden of proving deliberate indifference rests on the Plaintiff. *Id.* As noted above, Plaintiff has an especially difficult burden of proof in this case because there is no evidence - beyond the Plaintiff's self-serving testimony - that P.A. Schwarz ever saw him.

4

The United States Supreme Court has articulated a three-part test for proving deliberate indifference. The Plaintiff must prove: (1) the existence of an objective, serious medical need; (2) that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

In other words, the Plaintiff must establish that P.A. Schwarz actually knew (independently and subjectively) that the Plaintiff needed treatment for a serious medical need or risk but nevertheless <u>purposely and deliberately withheld such treatment</u>. *See Sellers*, 41 F.3d at 1102 (emphasis added). Deliberate indifference "is merely a synonym for intentional or criminally reckless conduct." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985).

2.    *The Plaintiff has not shown that he suffered from an objectively serious medical condition*

In order to defeat this Motion, Plaintiff must first prove the existence of an objective, serious medical need. *Estelle,* 429 U.S. at 107; *Sellers,* 41 F.3d at 1102; *Vance,* 97 F.3d at 991. A serious medical need is an objective, life-threatening situation, or a risk of needless pain or lingering disability that went untreated, which would have been so obvious that even a lay person would perceive the need for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005); *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991).

Here, the Plaintiff's alleged serious conditions are: bipolar disorder, migraines, hypertension, back spasms, and arthritis. (SOF at ¶ 46). He claims that he was on medications for all of these conditions immediately prior to his transfer into Stateville NRC on October 31, 2014. (SOF at ¶ 38). However, the medical transfer form completed by Cook County Jail medical staff at the time of his transfer from Cook County to Stateville NRC actually stated that

the Plaintiff was on zero medications at the time of his transfer from Cook County Jail to Stateville NRC. (SOF at ¶ 40).

Nor does the evidence regarding each of the Plaintiff's claimed ailments support the inference that, even if he demonstrated these conditions, they rose to the level of an objectively serious medical need. Regarding hypertension, the evidence established that medical providers other than P.A. Schwarz (because she never saw the Plaintiff) checked the Plaintiff's blood pressure on multiple occasions. (SOF at ¶ 61). Each reading was normal. (SOF at ¶ 61).

Regarding bipolar disorder, that is a condition that would be handled by a mental health professional rather than a physician's assistant, like P.A. Schwarz. (SOF at ¶ 57). In any event, when the Plaintiff saw a mental health professional at intake, the Plaintiff self-reported to the mental health professional that he had not been on any mental health medications for the last three years, and the mental health professional, after a discussion with the Plaintiff regarding his mental health needs, found that the Plaintiff required no treatment. (SOF at ¶ 57). This directly contradicts the Plaintiff's claim that he was both on and needed Prozac. (SOF at ¶ 56).

Regarding migraines, the Plaintiff claimed that he reported experiencing migraines, but the provider (again, not P.A. Schwarz) was given an albuterol inhaler. (SOF at ¶ 55). P.A. Schwarz explained that a medical provider would never issue a patient an albuterol inhaler after receiving a migraine report because albuterol inhalers actually cause migraines. (SOF at ¶ 55).

Finally, regarding back spasms/arthritis, those are, generally speaking, common complaints of generalized pain. Seventh Circuit case law analyzing whether pain is an objectively serious medical condition, requires that the pain be accompanied by some other objective indicia beyond the Plaintiff's subjective complaint of pain. *See Reed v. McBride,* 178 F.3d 849, 853 (7th Cir. 1999) (complaints of pain accompanied by internal bleeding, violent

cramps, and periods of unconsciousness); *see also Gutierrez v. Peters*, 111 F.3d 1364, 1370 (7th Cir. 1997) (pain complaints were objectively serious when it was manifestly clear that an untreated infected cyst caused "excruciating pain" sometimes accompanied by fever) (emphasis added). Here, Nurse Dart's October 31, 2014 note is completely silent on any mention that the patient self-reported back spasms or pain. (SOF at ¶ 54). Likewise, on November 3, 2014, P.A. Owikoti examined the Plaintiff and found him normal in every respect except for a prior injury to his left finger joint. (SOF at ¶ 58). While noting the prior injury, P.A. Owikoti also noted that the Plaintiff did not demonstrate a need for pain medication. (SOF at ¶ 59).

Ultimately, Plaintiff has no evidence that he was experiencing any of the medical conditions that he alleges required treatment, and even if he did, he certainly lacks evidence that those conditions rose to the level of an objectively serious medical need.

### 3.   P.A. Schwarz Lacked Subjective Notice of an Excessive Risk to the Inmate's Health

P.A. Schwarz lacked subjective notice of an excessive risk of harm to the Plaintiff. The second element of a deliberate indifference claim – subjective notice – requires that "[A] plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016).

As discussed, *supra*, P.A. Schwarz never saw or examined the Plaintiff. P.A. Schwarz testified that when she sees an inmate, she always makes a medical progress note. (SOF at ¶ 16). She testified that she makes a note so that if she sees the inmate again, she can refer to her prior notes. (SOF at ¶ 16). P.A. Schwarz reviewed the entire relevant medical chart and could not identify a single note signed by her. (SOF at ¶ 51). Rather, on October 31, 2014, the only medical provider that the Plaintiff treated with was Nurse Lisa Dart. (SOF at ¶ 52). The only physician's assistant that the Plaintiff saw at any point close in time to October 31, 2014 was

P.A. Owikoti on November 3, 2014. (SOF at ¶ 58). Simply, there is no evidence that P.A. Schwarz ever saw this Plaintiff. As such, she could never have obtained subjective notice.

Moreover, it bears noting that even if the Plaintiff could establish that he saw P.A. Schwarz on October 31, 2014, he could not have reported experiencing pain on that day. (SOF at ¶ 45). Plaintiff, initially, claimed that he told P.A. Schwarz that he was in pain during the October 31, 2014 examination (that the medical chart says was performed by Nurse Dart and not P.A. Schwarz). (SOF at ¶ 47, 50). However, at his deposition, the Plaintiff, admitted, under oath, that the pain only began *after* he spent a night sleeping in the "boat" - a type of temporary bed and mattress given to inmates in the overflow room. (SOF at ¶ 48). At his deposition, the Plaintiff could offer no explanation for how it was possible that he could have told P.A. Schwarz, on his very first day in the prison, about a pain that he admitted did not develop until his second day at the prison - the Plaintiff went silent. (SOF at ¶ 48).

Simply, Plaintiff has no evidence, beyond his own self-serving fiction that he saw P.A. Schwarz and provided her with notice of his medical conditions. As noted, his claims are directly refuted by numerous points of objective medical evidence and his own inconsistent testimony.

### 4. *P.A. Schwarz did not display the required culpability because she never actually treated the Plaintiff*

The Plaintiff's deliberate indifference claim against P.A. Schwarz also fails because the undisputed facts show that P.A. Schwarz never treated the Plaintiff, and, even if he could prove that she did treat him, there is no evidence of culpability. The third element of a deliberate indifference claim is that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle,* 429 U.S. at 107. In order to infer the required culpability, the medical professional's decision must be so far afield of accepted professional

standards as to raise the inference that it was not actually based on a medical judgment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008).

With respect to the culpable state of mind requirement, gross negligence is not enough; the conduct must be reckless in the criminal sense. *Lee. v. Young*, 533 F.3d 505, 509 (7th Cir. 2009). As the Seventh Circuit recently noted in an *en banc* decision, "Even objective recklessness - failing to act in the face of an unjustifiably high risk that is so obvious that it should be known - is insufficient to make out a claim." *Petties,* 836 F.3d at 728.

Here, the Plaintiff lacks any evidence, beyond his testimony, that P.A. Schwarz treated him. (SOF at ¶ 51). As noted, *supra,* the objective medical evidence supports P.A. Schwarz's testimony that she never treated this inmate. (SOF at ¶ 51). Even if this Court were to assume, in the face of the overwhelming evidence to the contrary, that P.A. Schwarz did see the Plaintiff, his claim still fails because he cannot prove the culpability requirement against P.A. Schwarz.

A medical provider is entitled to deference unless "no minimally competent medical professional would have so responded under these circumstances." *Sain*, 512 F.3d at 894-95. Here, the Plaintiff claims that he should have been prescribed various medications. (SOF at ¶ 4). Thus, if P.A. Schwarz can prove that at least one provider would not have given the Plaintiff these medications on or around October 31, 2014, Plaintiff's claim fails.

**P.A. Schwarz can point to <u>four (4) providers</u> who declined to give the Plaintiff the medications in the same time frame as her alleged October 31, 2014 examination**. First, the Plaintiff's exit transfer medical summary completed by Cook County Jail medical staff on October 31, 2014, noted that he was on zero active medications when he transferred into

Stateville NRC. (SOF at ¶ 39). Thus, on October 31, 2014, Cook County medical providers did not see fit to give the Plaintiff any medications. Second, Nurse Lisa Dart examined the Plaintiff on October 31, 2014. (SOF at ¶¶ 52-55). She examined the Plaintiff and also declined to give him any medications. (SOF at ¶¶ 52-55). Third, the Plaintiff treated with a mental health professional at intake, who also declined to give the Plaintiff any medication for his alleged bipolar disorder. (SOF at ¶¶ 56-57). Fourth, on November 3, 2014, the Plaintiff treated with P.A. Owikoti, who likewise, declined to give the Plaintiff medications beyond an inhaler. (SOF at ¶ 59).

In order to defeat the Plaintiff's claim, P.A. Schwarz only needed to point to one provider who declined to give the medications. She pointed to four (4). Thus, even if the Court believes the Plaintiff that P.A. Schwarz examined him on October 31, 2014 but declined to give him medication, in spite of all evidence to the contrary, he still cannot prove that no other provider would have declined to give him medications. Thus, his claim fails.

5. *The Plaintiff has not established a pattern of neglect*

The Plaintiff has failed to carry his burden of identifying a pattern of neglect by P.A. Schwarz in order to support his claim for constitutional deliberate indifference. The Seventh Circuit requires that when assessing whether the Plaintiff has satisfied the extremely high burden of proving deliberate indifference, the totality of an inmate's medical care must be considered. *See Dunigan v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999). A Plaintiff's "factual highlights" are not sufficient to deny summary judgment in the defense's favor. *Id.* A pattern of neglect must be evident in the record. *Id.*; *see also e.g. Gutierrez*, 111 F.3d at 1374-75 (holding that isolated incidents of neglect during an otherwise continuous stretch of adequate medical care is insufficient to support an inference of deliberate indifference).

Here, the Plaintiff focuses on a single interaction (that again, the objective evidence suggests never occurred). (SOF at ¶ 45, 51). However, the record shows that the Plaintiff was seen by one medical provider that day (Nurse Dart) and also a mental health professional. (SOF at ¶¶ 52-57). Likewise, he was seen by another P.A. on November 3, 2014. (SOF at ¶ 59). If he had a problem with P.A. Schwarz's alleged October 31, 2014 treatment, he had an opportunity to address it with a different provider who held the exact same licensure as P.A. Schwarz just three days later. (SOF at ¶ 59). Of course, P.A. Owikoti made the exact same medical assessment as every other provider, including those at Cook County Jail. (SOF at ¶ 59). Simply, there is no evidence of a pattern of neglect.

### 6. No expert or verifying medical testimony established a causal connection between P.A. Schwarz's alleged deliberate indifference and Plaintiff's alleged damages

The Plaintiff produced no medical testimony establishing his claims that P.A. Schwarz's, alleged, inadequate medical treatment detrimentally caused him harm. Without medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of his medical treatment is insufficient to raise a genuine issue of material fact. *Jackson v. Pollion,* 733 F.3d 786, 790 (7th Cir. 2013) (Posner, J.) (requiring plaintiff to offer "verifying medical evidence" that the provider's alleged failure caused injury because "there is no tort - common law, statutory, or constitutional - without an injury, actual or at least probalistic"); *Walker v. Zunker*, 30 Fed. App'x. 625, 628 (7th Cir. 2002); *see also Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (finding that a plaintiff must have such "verifying medical evidence" when the deliberate indifference claim is based on the alleged failure to treat a condition adequately); *Zumut v. Lemke*, No, 14-C-6479, 2017 U.S. Dist. LEXIS 146906, * 18 (N.D. Ill. Sept. 11, 2017) ("In addition, [the inmate] cannot prove a claim for deliberate indifference without providing evidence that the [doctor's alleged] failure caused injury.") (internal citation omitted).

11

To the degree that the Plaintiff claims that P.A. Schwarz's alleged failure to prescribe medications delayed his ability to secure medications until a later date (presumably, three days later, when he treated with P.A. Owikoti, who also declined to provide medications), the Plaintiff has produced no verifying medical evidence. (SOF at ¶ 59); s*ee also Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996) ("an inmate who complains that a delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"); *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir, 1999); *Padilla v. Bailey,* No. 09-C-8068, 2011 U.S. Dist. LEXIS 80945, * 17-18, 2011 WL 3045991 (N.D. Ill. July 25, 2011) ("[B]ecause [the plaintiff] did not introduce verifying medical evidence that shows his condition worsened because of the delay, his deliberate indifference claim fails) (internal quotations omitted); *Smith* v. *Wexford Health Sources, Inc.*, No, 15-CV-3730, 2017 U.S. Dist. LEXIS 187760, * 13-14 (finding for a Wexford medical provider when the inmate failed to produce verifying evidence of the detrimental effect of any alleged delay in treatment by that provider);

Under any theory against P.A. Schwarz, Plaintiff needs verifying medical evidence. *See Lambert v. Adler*, 587 Fed.App'x. 976, 978 (7th Cir. 2014). He has none. Therefore, this Court should grant summary judgment in favor of P.A. Schwarz.

## E.    The Plaintiff has Failed to Prove his Claim Against Wexford Health Sources, Inc.

The Plaintiff has not met his burden in suing a corporation under Section 1983. Private corporations acting under color of state law, like municipalities, may be held liable for injuries resulting from unconstitutional policies or practices. *Monell v. Dept. of Social Servs. of City of New York,* 436 U.S. 658, 690-91 (1978).

In order "[t]o hold [Wexford] liable under § 1983 and *Monell*, [Plaintiff] must demonstrate that [Wexford's] 'official policy, widespread custom, or action by an official with policy-making authority was the "moving force" behind his constitutional injury." *See Smith*, 2017 U.S. Dist. LEXIS 187760 at *19-20 *quoting Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016) (quoting *Dixon v. Cnty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016)).

The Plaintiff can meet his burden of proof on the *Monell* claim by showing that Wexford maintained an unlawful policy, custom, or widespread practice. *Dixon*, 819 F.3d at 348. However, the Plaintiff must offer "competent evidence tending to show a general pattern of repeated behavior (*i.e.,* something greater than a mere isolated event.)" *Smith*, 2017 U.S. Dist. LEXIS 187760 at * 20 *quoting Daniel*, 833 F.3d at 734. The inmate must "Show more than the deficiencies specific to his own experience". *Smith*, 2017 U.S. Dist. LEXIS 187760 at * 20.

The Plaintiff's claim against Wexford fails for three reasons: (1) he only sued Wexford for *respondeat superior* liability; (2) he has failed to identify any policy or widespread practice; and (3) there is no deliberate indifference by the underlying Wexford provider - P.A. Schwarz.

1.  The Plaintiff has impermissibly sued Wexford only on *Respondeat Superior* Liability

The Plaintiff cannot sue Wexford based on a theory of *respondeat superior* liability. The ban on § 1983 *respondeat superior* claims applies equally to alleged civil rights violations committed by a private corporation. *Iskander*, 690 F.2d at 127 (7th Cir. 1982); *see also Hahn*, 762 F.3d at 640 (7th Cir. 2014) ("*Iskander* is compatible with the holding of every circuit to have addressed the issue").

Here, the Plaintiff did not expressly file a *Monell* claim. (SOF at ¶ 4). Rather, he sued Wexford solely through the actions of its employee, P.A. Schwarz. (SOF at ¶ 4). This is a

13

textbook allegation of the kind of vicarious liability claim expressly barred in § 1983 claims against Wexford. Thus, Plaintiff's Wexford claims fail at the outset.

2.   Even if the Plaintiff actually pled *Monell* liability, he has not identified an unconstitutional policy or widespread practice of Wexford that caused him harm

Even if the Plaintiff actually pled a *Monell* liability claim, which he expressly did not, he has failed to identify any unconstitutional policy or widespread practice by Wexford that caused him harm. There are two components to a *Monell* claim, first, the Plaintiff must show that an unconstitutional policy or practice exists, and then, second, the Plaintiff must show that deliberate indifference occurred as a result of this unconstitutional policy or practice. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). Plaintiff fails on both showings.

First, the Plaintiff has not produced or cited to a single Wexford policy. The issue in this case relates to a new inmate intake screening at Stateville NRC. (SOF at ¶ 4). Despite litigating this case for many years, the Plaintiff has failed to identify a single Wexford policy in this case.

Absent clear evidence of an unconstitutional policy, the Court should not take the Plaintiff's word and assume that one exists. In *Montague v. Wexford Health Sources, Inc.*, the Seventh Circuit affirmed the District Court's grant of summary judgment to Wexford when an inmate claimed that Wexford maintained an unconstitutional policy or widespread practice, but could produce no evidence of either. 615 F. App'x. 378, 379 (7th Cir. 2015). The Seventh Circuit noted that the prisoner's self-serving idea that Wexford had a policy or practice to promote delaying or denying necessary medical treatment was senseless because such a policy would actually end up costing Wexford more money in the long-term. *Id.*

Second, the only policy that could conceivably be at issue in this case - new inmate screenings at Stateville NRC - was developed by the IDOC and not Wexford. The IDOC and not Wexford developed the medical screening protocols for inmates arriving into Stateville NRC.

(SOF at ¶ 14). Thus, to the degree that the Plaintiff claims that the screening process violated the constitution and caused him harm, his *Monell* claim should more appropriately be directed against the entity that developed and implemented the policy - the IDOC.

> 3. <u>Finally, even if the Plaintiff pled a *Monell* claim, his claim still fails because he cannot prove underlying deliberate indifference against P.A. Schwarz</u>

Finally, even if the Plaintiff actually pled a *Monell* claim - which he did not - Plaintiff cannot establish underlying deliberate indifference against P.A. Schwarz. *See Shaw v. Wexford Health Sources, Inc.*, No. 13-cv-9335, 2017 U.S. Dist. LEXIS 5661, * 12 (N.D. Ill. Jan. 13. 2017) ("No reasonable jury could return a verdict against Wexford for deliberate indifference, particularly when there is no individual liability"); *see also Pyles v. Fahim,* 771 F.3d 403, 412 (7th Cir. 2014) (holding that Wexford was not liable for damages because there was no underlying constitutional violation); *see also Smith*, 2017 U.S. Dist. LEXIS 187760 at * 21 (noting that one additional basis for denying a *Monell* claim against Wexford would have been the "lack of deliberate indifference by the individual defendants").

**F.    The Plaintiff's claim for punitive damages fails**

The Plaintiff claims punitive damages; however, he has not proven any set of facts that would allow him to recover punitive damages. Punitive damages may be awarded under 42 U.S.C. § 1983 only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Schaub v. VonWald*, 638 F.3d 905, 922-23 (8th Cir. 2011). P.A. Schwarz never saw the Plaintiff, and there is certainly no evidence in this case to support that she ever had an evil motive or intent towards this inmate. (SOF at ¶ 51). Therefore, even if this Court finds that there is a question of fact as to the Plaintiff's deliberate indifference claim, it should still find that the Plaintiff will be unable to recover punitive damages, and grant Summary Judgment on this issue.

## <u>CONCLUSION</u>

For the reasons stated above, the Plaintiff cannot prove that P.A. Schwarz treated him, and even if she did, that she exhibited constitutional deliberate indifference in her sole alleged interaction with the Plaintiff on October 31, 2014. Because P.A. Schwarz is not liable (among other reasons cited above), the Plaintiff's claim against Wexford necessarily fails.

WHEREFORE, Defendants, WEXFORD HEALTH SOURCES, INC. and MARY DIANE SCHWARZ, P.A., pray that this Honorable Court enter an Order granting Summary Judgment in their favor, dismissing the case with prejudice against Plaintiff, awarding fees and costs, and for any other relief deemed just.

Respectfully submitted,

WEXFORD HEALTH SOURCES, INC. and
MARY DIANE SCHWARZ, P.A.

By:  /s/ James F. Maruna
    Matthew H. Weller / ARDC No. 6278685
    James F. Maruna / ARDC No. 6313433
    CASSIDAY SCHADE, LLP
    20 N. Wacker Drive, Suite 1000
    Chicago, IL 60606
    (312) 641-3100
    (312) 444-1669 - Fax
    mweller@cassiday.com
    jmaruna@cassiday.com

    *Counsel for Defendants, Wexford Health*
    *Sources, Inc. and Mary Diane Schwarz, P.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2017 I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

<u>/s/ James F. Maruna</u>

8723351 JMARUNA;JMARUNA