IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY TRIPP, | ) |
| Plaintiff, | ) |
| | ) No. 15 C 1728 |
| v. | ) |
| | ) Judge Jorge Alonso |
| DR. DIANE, JOHN DOE #1, BERNETTA BARNES, OFFICER WHITFIELD, OFFICER THURMAN, LT. DUNLAP, TEJADA ENGLESON, TARRY WILLIAMS AND WEXFORD HEALTH SOURCES, INC., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Anthony Tripp, brings this lawsuit against Diane Schwarz, P.A., and Wexford Health Sources, Inc. ("Wexford,"), pursuant to 42 U.S.C. § 1983, asserting claims of violations of his constitutional rights arising out of negligent medical care that plaintiff allegedly received while in the custody of the Illinois Department of Corrections ("IDOC"). Defendants have moved for summary judgment. For the following reasons, the Court grants the motion in part and denies it in part.

## BACKGROUND

On October 31, 2014, following his sentencing on a criminal conviction, plaintiff was transferred from Cook County Jail to the Stateville Northern Reception and Classification Center ("Stateville NRC"), an intake processing facility within the IDOC system. (Defs.' LR 56.1 Stmt. ¶¶ 5, 9, ECF No. 144.) Wexford is a private corporation that contracts with IDOC to provide

certain specified medical services to inmates at IDOC facilities, including Stateville NRC. (*Id.* ¶ 7.)

Upon arriving at Stateville NRC, plaintiff received an initial medical screening. (*Id.* ¶ 43.) Plaintiff claims that he was examined by defendant Schwarz, a Wexford employee, and that during the examination, he told her that he had a history of bipolar disorder, migraines, hypertension, back spasms, and arthritis. (*Id.* ¶¶ 6, 44-46.) Plaintiff also claims to have told Schwarz that he was suffering from serious back pain. (*Id.* ¶ 47.) However, Schwarz gave plaintiff no medications or treatment other than an albuterol inhaler to treat migraines. (*Id.* ¶ 49.)

Plaintiff recalls Schwarz examining him in some detail, and at his deposition, he was able to describe her physical appearance accurately. (Defs.' LR 56.1 Resp. ¶ 6, ECF No. 156.) Schwarz, however, does not recall treating plaintiff or interacting with him at all, nor do records of plaintiff's medical treatment at Stateville NRC show that she treated him at any point. (Defs.' LR 56.1 Stmt., Ex. B., Schwarz Dep. at 26:13-27:16, ECF No. 144-1 at 61.) According to plaintiff's medical chart, on October 31, 2014, a nurse, Lisa Dart, took plaintiff's nursing history, and another physician's assistant, Claude Owikoti, performed plaintiff's history and physical examination; there is no record of Schwarz examining plaintiff. (Pl.'s LR 56.1 Resp. ¶ 52, ECF No. 153.) At her deposition, Schwarz testified that the medical staff at Stateville NRC occasionally had to examine and process 200 inmates in six hours, and she could not give an estimate of how much time she typically spends with each inmate. (Defs.' LR 56.1 Resp. ¶ 7, ECF No. 156.)

Plaintiff was ultimately placed at Western Illinois Correctional Center, and the medical staff there provided him with nineteen different medications to treat various ailments, compared with the one medication, the albuterol inhaler, that he received at Stateville NRC. (*Id.* ¶ 14.)

Plaintiff filed this lawsuit against numerous individuals at IDOC and Wexford. The claims against the IDOC defendants have been dismissed, leaving only the claims against Schwarz and Wexford. Plaintiff claims that (1) Schwarz treated plaintiff with deliberate indifference to his serious medical needs, in violation of his constitutional rights under the Eighth Amendment; and (2) Wexford maintains an unconstitutional policy or practice of rushing inmates through the intake process so quickly that it is unable to accurately assess their medical needs.

## **LEGAL STANDARDS**

When a party moves for summary judgment, the court must grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The court . . . must view the record in the light most favorable to the non-moving party and give the benefit of reasonable inferences to the non-moving party." *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court may not weigh conflicting evidence or make credibility determinations, and the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009); *see Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013) (court must enter summary judgment against a party who "'does not come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question'") (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)).

"Section 1983 creates a cause of action against any person who, under color of state law, 'subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Blossom v. Dart*, 64 F. Supp. 3d 1158, 1161 (N.D. Ill. 2014) (quoting 42 U.S.C. § 1983). When prison guards or staff display "deliberate indifference to serious medical needs of prisoners," they violate the Eighth Amendment's prohibition of "cruel and unusual punishments." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner complaining of such deliberate indifference must show that the defendants knew that he had an objectively serious medical condition, they were deliberately indifferent to providing the treatment the prisoner needed, and their indifference caused the prisoner harm. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

"[A] prisoner's medical need is 'serious' where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). To show that he was treated with deliberate indifference, a prisoner need not "'show that he was literally ignored,'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Sherrod v. Lingle,* 223 F.3d 605, 611 (7th Cir. 2000)), but he must show more than mere negligence:

> The [accused] officials must know of and disregard an excessive risk to inmate health; indeed they must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the inference. This is not to say that a prisoner must establish that officials intended or desired the harm that transpired. Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk.

*Greeno*, 414 F.3d at 653 (internal citations and quotation marks omitted). Prison staff may exhibit deliberate indifference to a known condition through inaction, *Gayton*, 593 F.3d at 623-

4

24; *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 832 (7th Cir. 2009), or by delaying necessary treatment and thus aggravating an injury or needlessly prolonging an inmate's pain, *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012).

Under § 1983 and *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978), "[p]rivate corporations acting under color of state law may, like municipalities, be held liable for injuries resulting from their policies and practices," *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012), where their polices and practices "sanction[] the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners." *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citing *Estate of Novack ex rel. Turbin v. Cty. of Wood,* 226 F.3d 525, 530 (7th Cir. 2000)); *see Taylor v. Wexford Health Servs.*, Inc., No. 11 C 7386, 2012 WL 245165, at *4 (N.D. Ill. Jan. 26, 2012) ("Plaintiff's claim is evaluated under the standard of *Monell* [because] Wexford qualifies as a state actor for Section 1983 purposes[, since] it is performing a governmental function that was delegated to it by the IDOC, but it is not considered an arm of the State of Illinois for sovereign immunity and Section 1983 purposes because it is legally a separate entity from the State and would [be] required to pay any judgments on its own.") (internal citations omitted).

To prevail on his claim against Wexford, plaintiff must show that Wexford's practice of rushing inmates through their initial medical screenings amounts to a policy of indifference to inmates' objectively serious medical needs and that plaintiff was harmed as a result. *See Monell*, 436 U.S. at 694; *Estelle*, 429 U.S. at 104-05; *Daniel v. Cook Cty.*, 833 F.3d 728, 734 (7th Cir. 2016). Plaintiff must come forward with evidence that would allow a reasonable trier of fact to find not only "systemic and gross deficiencies in . . . [Stateville NRC's] medical care system," but also that "a policymaker or official knew about these deficiencies and failed to correct them,"

5

*see Daniel*, 833 F.3d at 735, or that "'the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision,'" *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (quoting *Phelan v. Cook Cty.*, 463 F.3d 773, 790 (7th Cir. 2006)); *see also Daniel*, 833 F.3d at 734 (plaintiff can show sufficiently pervasive practice by showing "'a general pattern of repeated behavior (*i.e.*, something greater than a mere isolated event'") (quoting *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006)). Although plaintiff need not present evidence that such systemic failings actually caused pain and suffering to other specific inmates, he must show that the systemic failings, not wrongdoing merely unique to his own experience, were the "'moving force' behind his constitutional injury." *Dixon*, 819 F.3d at 348 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)); *see Daniel*, 819 F.3d at 734-35.

## ANALYSIS

Defendants seek summary judgment on the following grounds: (1) plaintiff cannot establish the elements of his § 1983 deliberate indifference claim against Schwarz; (2) plaintiff cannot establish that Schwarz acted pursuant to a policy or widespread practice maintained by Wexford; and (3) plaintiff cannot prove punitive damages.

### I. SCHWARZ'S DELIBERATE INDIFFERENCE

Plaintiff contends that he has come forward with evidence satisfying all of the elements of a deliberate indifference claim pursuant to § 1983 by testifying at his deposition that (a) he was in serious pain at the time of his October 31, 2014 intake screening with Schwarz; (b) he told Schwarz of the pain; and (c) Schwarz refused to provide any medication or treatment.

Defendants argue that this showing is insufficient because other evidence in the record contradicts it. Plaintiff's medical records show, according to defendants, that Schwarz never treated plaintiff. Further, defendants point out that plaintiff's deposition testimony was internally

6

inconsistent in key respects. Plaintiff seemed to testify at certain points that he was in serious pain at the time of his initial medical screening and he told Schwarz about it, but at other points, plaintiff seemed to testify that he was not in pain at the time of his intake screening with Dr. Schwarz, and that his back pain began later after he was forced to sleep on a temporary mattress on the floor. (*Compare* Defs.' LR 56.1 Stmt., Ex. A., Pl.'s Dep. at 146:4-7, ECF No. 144-1 at 38 ("And you weren't in this level of pain when you arrived at Stateville NRC, is that correct? A: No. Q: Okay. Did you tell anyone at Stateville NRC about your pain? . . . A: . . . When I came in, I told Dr. Diane Schwartz [*sic*] of my medical conditions, my issues, arthritis, back spasm, all of that. She documented it *and then I told her*.") (emphasis added) *with id.*, Pl.'s Dep. at 145:1-13 ("Q: Did you ever experience intense pain while you were at Stateville NRC? A: Yes. Q: . . . [W]hen did the pain start? A: When I had to sleep, . . . having to sleep on the floor."). When confronted with the apparent inconsistency, plaintiff twice failed to respond, before finally answering, the third time he was asked, that sleeping on the temporary mattress "magnified" pain from which he was already suffering. (*Id.* at 147:6-148:12.)

By highlighting these and other inconsistencies in the evidence, defendants make an argument that is out of place at the summary judgment stage, when the Court does not "weigh conflicting evidence or make credibility determinations, which are the province of the jury," *Omnicare*, 629 F.3d at 704-05. In portions of his deposition testimony, plaintiff testified that he was in serious pain when he saw Schwarz on October 31, 2014, he told Schwarz of his pain, and she provided no treatment. A reasonable jury could choose to believe that these portions of his testimony represent the truth of the matter, and if so, then plaintiff is entitled to relief. True, the jury could also believe Schwarz that she never even saw plaintiff, and disbelieve plaintiff based on the inconsistencies in his testimony and the other evidence. But in such a situation, "[a] trial,

7

not summary judgment, is the way to determine who is telling the truth." *Owens v. Chi. Bd. of Educ.*, 867 F.3d 814, 816 (7th Cir. 2017).

In their briefs, defendants repeatedly cite *Scott v. Harris*, 550 U.S. 372, 381 (2007), in which the Supreme Court explained that a district court considering a motion for summary judgment need not adopt the non-moving party's version of the facts if it is "so utterly discredited by the record" that no reasonable jury could possibly believe it. In *Scott*, the plaintiff claimed that the defendant officer unlawfully seized him because he was driving in a "cautious and controlled" manner, but a videotape of the incident showed that in fact the plaintiff was driving in an extremely wanton and reckless manner, as in a "Hollywood-style car chase of the most frightening sort." *Id.* at 378-80. Under such circumstances, the plaintiff's account was an obvious, "visible fiction." *Id.* at 380. But in this case, it is not so certain that plaintiff's version of events is fictional. Plaintiff was vehement in his insistence that he remembered his screening appointment with Schwarz, and he was able to describe her physical appearance. He asserts that the surviving medical records do not reflect the truth of the matter. Thus, this case is unlike *Scott*, where there was no "contention that what [the videotape] depicts differ[ed] from what actually happened." *Id.* at 378. Nor is that contention, in this case, so irrational or fanciful that no reasonable jury could believe it. However common it may be for Schwartz to record each examination she undertakes, the possibility that the documentation of her examination of plaintiff was, for example, not created or not retained due to mistake or oversight does not strike the Court as particularly farfetched.

Defendants also argue that plaintiff was required to produce "verifying medical evidence" of his serious medical condition. But this argument, too, is out of place. Plaintiff has alleged that he was in serious pain and that Schwartz did not treat him or give him medication

8

that would have alleviated his pain. In the cases defendants cite, the plaintiffs claimed to suffer from medical conditions that had worsened as a result of delays in treatment, or that arose because of failure to treat less serious medical conditions. (*See* Defs.' Reply Br. at 12-13, ECF No. 155.) Under such circumstances, the plaintiffs were required to introduce "verifying medical evidence" to prove the deterioration or aggravation of their condition, and that the deterioration or aggravation was due to the delay or absence of treatment, not the underlying health issue. *See, e.g., Norwood v. Ghosh*, 723 F. App'x 357, 366 (7th Cir. 2018) ("The mere possibility that delays in treating Norwood's knee contributed to permanent damage falls short of verifying medical evidence that would allow a reasonable jury to find by a preponderance of the evidence that such causation actually occurred."). But where, as here, the plaintiff testifies that he was in serious pain and the defendant simply failed to provide any treatment to alleviate his pain, the prolonged pain, not some decline in his condition, is the relevant injury. *See Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (plaintiff's description of "excruciating pain" from back spasm sufficient to survive summary judgment); *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999) (plaintiff's "claims that the denial of doctor-prescribed medicine led to agonizing and extreme pain" sufficient to survive summary judgment).

The Court fails to see why "verifying medical evidence" is necessary to prove that plaintiff was in pain. He has testified that he was, and that Schwarz did not treat him for his pain despite knowledge of the condition, and "[a] trial, not summary judgment, is the way to determine [whether he] is telling the truth." *Owens*, 867 F.3d at 816. Plaintiff's claim of deliberate indifference against Schwarz presents a genuine issue of fact for trial.

## II. *MONELL* CLAIM AGAINST WEXFORD

9

Plaintiff claims that Wexford maintains an unconstitutional policy or practice of rushing inmates through the intake process so quickly that it is unable to accurately assess their medical needs. For evidence to support this claim, plaintiff relies entirely on Schwarz's testimony that she and the other medical staff at Stateville NRC might have to process 200 new inmates in a given afternoon, between 1 p.m. and 7 p.m. Plaintiff calculates that, based on the number of medical staff members who are typically available (again, according to Schwarz's testimony), this would take approximately 10.8 minutes per inmate. According to plaintiff, the *Monell* claim should survive defendants' motion because a time frame of less than eleven minutes per inmate is insufficient to complete a through medical screening.

Plaintiff relies solely on *Marshall v. Wexford Health Sources, Inc.*, No. 14-cv-722 (S.D. Ill. Nov. 7, 2016), ECF No. 126, but *Marshall* does not support plaintiff's position. In *Marshall*, the plaintiff's *Monell* claim against Wexford survived summary judgment based on the plaintiff's expert's finding that Wexford's intake dental screenings took an average of 2.6 minutes per inmate, which was inadequate. In this case, the plaintiff does not offer any expert testimony. He offers only the lay testimony of Schwarz, which is not sufficiently detailed or precise to support a reasonable jury verdict in plaintiff's favor on the *Monell* claim. Schwartz did not actually testify that the Stateville NRC medical staff processed incoming inmates at a rate of 200 in six hours, as plaintiff suggests. Rather, in the portion of the deposition that plaintiff cites, Schwarz mentioned that 200-inmate figure by way of illustrating, with hypothetical numbers, that her work hours varied based on how many inmates the Stateville NRC received on a given day. (*See* Schwarz Dep. at 22:10-23:13.) In context, the thrust of the testimony was not that she had inadequate time to accomplish her work; it was that she and the staff stayed as late as necessary

to accomplish it. Schwartz did not testify, nor is there any evidence to show, that the staff did not take sufficient time to conduct adequate medical screenings.

Further, in order to calculate the 10.8-minutes-per-inmate figure, plaintiff assumes six medical staff members processing the 200 incoming inmates. This assumption is based on Schwarz's testimony: "There's one full time [P.A.] that works with me, and there's a part-time L.P.N. . . . and then there are several p.r.n. [staff members]. Same way with M.D.s. We have p.r.n. M.D.s that also come in." (*Id.* at 23:18-22.) The Court fails to see how plaintiff arrives at an estimate of six medical intake staff members based on this vague testimony. Schwarz did not testify with any clarity or certainty as to how many medical staff members are working at any one time. And even if the 10.8-minutes figure is correct, there is no evidence in this case, unlike in *Marshall*, that that amount of time is inadequate.

Schwarz's testimony, without more, is woefully inadequate to support plaintiff's *Monell* claim. The Court grants defendants' motion for summary judgment as to the *Monell* claim.

### III. PUNITIVE DAMAGES

Defendants argue that plaintiff is not entitled to punitive damages against Schwarz because there is no evidence to establish that she acted with the requisite level of culpability. In response, plaintiff explains that punitive damages are available for a violation of constitutional rights pursuant to § 1983 "'when the defendant's conduct . . . involves reckless or callous indifference to the federally protected rights of others.'" *Alexander v. City of Milwaukee*, 474 F.3d 437, 453 (7th Cir. 2007) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). The "level of culpability" required for a finding that Schwarz violated plaintiff's constitutional rights under the Eighth Amendment "is the same as the punitive damage standard: both require a determination that the defendants acted with deliberate indifference or reckless disregard for the plaintiff's

11

right[s]." *Walsh v. Mellas*, 837 F.2d 789, 801 (7th Cir. 1988). Because the Court concludes that a reasonable jury could find in plaintiff's favor on his § 1983 Eighth Amendment claim against Schwarz, it must also conclude that he can recover punitive damages. Defendants' motion is denied as to this ground.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment [143] is granted in part and denied in part. The motion is granted as to the *Monell* claim against Wexford, but it is otherwise denied. Status hearing remains set for November 28, 2018, at 9:30 a.m. The parties are directed to meet and confer to assess settlement prospects.

**SO ORDERED.**                                         ENTERED:  October 24, 2018

                                                                                  _____
                                                                                  **HON. JORGE L. ALONSO**
                                                                                  **United States District Judge**